## No. 728.

### J. H. REINHOLD vs. JOHN T. LUDELING ET AL.

The members of a corporation, organized under the laws of this State, for the purpose of transporting persons or property for hire, are not liable individually, or *in solido*, for the obligations of the corporation executed by its authorized officers.

APPEAL from the Fourteenth Judicial District Court, parish of Ouachita. *Parsons,* J.

*R. W. & R. Richardson,* for plaintiff and appellant.

*Frank P. Stubbs,* for defendants and appellees.

The opinion of the court was delivered by

MARR, J. This is a suit against John T. Ludeling, John Ray, Francis P. Stubbs, Wesley J. Q. Baker, and William R. Gordon, to recover of them *in solido* the amount of two promissory notes of the North Louisiana and Texas Railroad Company, one dated the first of January, 1871, payable one day after date, to the order of J. H. Reinhold, for two thousand dollars, signed "John Ray, president," countersiged "Joseph F. McGuire, secretary;" the other dated the twenty-first of January, 1874, payable one day after date, to the order of George C. Waddill, for three thousand dollars, signed "John T. Ludeling, president N. L. & T. R. R. Co.," countersigned "Joseph F. McGuire, secretary."

The petition charges that the defendants and their associates purchased at sheriff's sale, on the third of February, 1866, all the property, rights, and franchises of the "Vicksburg, Shreveport, and Texas Railroad Company," and, after having operated the same as a railroad under the old name for a considerable length of time, they, the defendants, with others, Geo. C. Waddill, James M. Horne, and Wm. M. Pinckard, were, by the provisions of act No. 108 of 1868, "specially created into a body corporate and politic, for the purpose of constructing, maintaining, and operating a railroad and magnetic telegraph on the line of the railroad which had been purchased by them on the third of February, 1866, the road to be used for the purpose of transporting freight of every kind,

and passengers, the name and style of the corporation to be 'the North Louisiana and Texas Railroad Company,' with domicile at Monroe."

The petition goes on to charge that "defendants, with their associates, did operate said road under that firm name *and by authority of said act of incorporation;* that John Ray and John T. Ludeling were presidents of said company and Joseph F. McGuire secretary on the respective dates that their names were affixed to the obligations in suit;" that they did run said railroad; that they did carry freight and passengers for hire; "were *common carriers* and *commercial partners;* and by their acts and declarations induced other third persons as well as petitioner to trade with them and accept their paper and written obligations, under the assurance that they (defendants) were bound *in solido;* that they so held themselves out to the world, and while thus associated as common carriers and commercial partners they executed and issued, *by their duly authorized and empowered officers,* the obligations in suit, of which petitioner is legal holder and owner for a valuable consideration."

The prayer is for judgment *in solido* against defendants for the amount of the two obligations, with interest as stipulated.

After exceptions to the service of the citations, which were overruled, and which need not be noticed, defendants answered, beginning with a general denial. They admitted that the notes sued upon were executed by "the North Louisiana and Texas Railroad Company, a corporation incorporated by the General Assembly of Louisiana in the year 1868; but they deny that they are personally responsible for the obligations of said corporation."

The judgment of the district court was in favor of defendants as in case of nonsuit. Plaintiff appealed; and defendants in their answer pray that the judgment be so amended as to be final against the demand of plaintiff.

The capacity of John Ray and John T. Ludeling as successive presidents, and of Joseph F. McGuire as secretary, of the North Louisiana and Texas Railroad Company, and the genuineness of their respective signatures to the notes sued on were admitted.

It was also admitted that J. W. Greene, receiver, since the thirteenth of April, 1875, operated the road; that during the presidency of Ray and Ludeling, at the time the obligations sued on were executed, the road, while in operation, transported persons and personal property for hire.

There were other admissions and proof which require no special notice beyond the fact that J. W. Greene took possession of the road as receiver under the appointment of the United States Circuit Court; and that none of the officers of the company had any thing to do with operating the road after Greene took possession. The allegations of the petition were proven substantially as charged, except that we find no proof of

any representations by defendants to the effect that they were bound *in solido* for the debts and obligations of the company.

The entire case of the plaintiff rests upon the theory that all persons who engage in the business of transporting persons and personal property for hire, that is, all common carriers, are commercial partners and as such bound *in solido*.

In Chaffe & Bro. vs. Ludeling et al., decided in 1875, reported in 27 An., which was a suit on an obligation like those sued on in this case, except that it was executed in November, 1866, nearly two years before the act incorporating defendants, our predecessors held that no other common carriers are liable as commercial partners but those who prosecute that business by the use of ships and other vessels; and that defendants, as an incorporated association, were liable jointly, and not *in solido*.

We are not prepared to assent to this doctrine; but under the view we take of this case it is not necessary to pass upon that question. It may not be out of place, however, to say that at the time the Civil Code was adopted the business of common carriers in Louisiana was confined almost exclusively to transportation by water. Moreover, it was intended at that time to adopt a "Commercial Code," and the frequent references in the Civil Code to the "Commercial Code" show plainly that the compilers of the Civil Code designed to deal with commerce in general terms only, and to defer to the "Commercial Code" for details and a complete system of commercial law. The "Commercial Code" was not adopted, and the Civil Code contains but few rules of commercial law.

The character of a partnership must be determined by the object for which it is formed, the business intended to be pursued; and the Code characterizes as a commercial partnership that which is formed "for carrying personal property for hire in ships or other vessels." R. C. C. 2875. Manifestly, this is a mere description, not a limitation, of the means and instrumentality by which a business or pursuit to which the law attaches the obligations of a commercial partnership may be conducted. A strict literal interpretation of the article of the Code would exclude common carriers of passengers only, and would illogically, without reason, attach more importance to the vehicle used than to the business for which it is used in determining the obligations resulting from that business. But we need not pursue this subject, for the reason that it is not necessary to the decision of the case.

Several bills of exception were taken to the rulings of the court in admitting and in rejecting testimony on the trial. As the testimony offered was wholly immaterial, and could in no manner affect the rights of the parties, it is not necessary to pass on these rulings of the court.

Both the obligations sued on in this case are promissory notes of the North Louisiana and Texas Railroad Company in its corporate name

Reinhold vs. Ludeling.

and capacity, through its proper officers, under the act of incorporation. The petition fails to disclose any consideration whatever for these notes; and the case stands solely upon the assumption that they are obligations of the corporation, executed and issued by its " *duly authorized and empowered officers*," and that they import a sufficient consideration.

It is not possible to raise the question more distinctly or to present it more plainly and simply: "Are the members of an incorporated company, organized and established mainly for the purpose of transporting persons and property for hire, liable *in solido*, individually, as commercial partners, upon promissory notes of the corporation, executed and issued by its *duly authorized and empowered officers ?*"

Solidarity of obligation necessarily implies a plurality of obligors. The owners of ships and other vessels, who employ them in the transportation of personal property for hire, are liable *in solido* as commercial partners with respect to that business; but it would be quite idle, wholly without meaning, to say that the sole owner of a ship or other vessel, who employs it in carrying personal property for hire, is liable *in solido* and as a commercial partner. Sole obligor, sole beneficiary of his contracts and engagements, he alone is liable.

An act of incorporation makes the corporators, however numerous, one single juridical person, one single whole. The corporators no longer have individuality, so far as the relations of the corporation with others are concerned; and the several individualities are aggregated and merged into one creation of the law, the corporation which they compose. In all contracts, all dealings of the corporation, it is not the individual members who speak, and who act, and who bind themselves. It is the corporation, and the corporation alone; and the corporation is as truly a unit, one single juridical being and personage, as is individual man in his individual acts and engagements. If solidarity is not applicable to the single engagements of an individual doing business, whatever it may be, in his individual name, and for his individual account and benefit, how can that term apply to the contracts, and engagements, and obligations of a corporation not less a unit, not less ONE ?

A number of persons, associated for the carrying of personal property for hire, in ships or other vessels, do, either by special contract, or in legal intendment, form a commercial partnership, and they are bound *in solido;* but when the same individuals associate themselves under a charter of incorporation, they do not form a partnership, but do, by contract, and in legal intendment, form and constitute a juridical being, called a corporation; and if, in accordance with its organic law, the act of incorporation, this juridical being, this corporation, pursues the same business, there are no longer individuals contracting and engaging them-

selves, there is no longer an association which the laws calls a commercial partnership, there is simply one personage, one juridical being. The individual corporators are not bound; the single juridical being, the corporation alone, is bound; and it is bound in its aggregate capacity as one personage, just as one individual man is bound by his single contracts and engagements.

These principles are elementary, and they are laid down and formulated in the Civil Code, chapter ten, in plain and unequivocal terms. The plaintiff contracted with the corporation, not with the individual members, as the notes sued on clearly prove; and he must seek his remedy against the corporation, his debtor, not against the individual members, who are not his debtors.

The defendants are entitled to the amendment prayed for in their answer to the appeal. The notes sued on and the allegations of the petition show that these are the obligations of the corporation in its corporate name and capacity, by its "*duly authorized and empowered officers,*" and not the obligations of the individual members; and the law, Revised Civil Code, article 437, declares that such obligations can be enforced only through the president and against the property and effects of the corporation. The corporation may be bound, its property and effects may be liable, for these notes; but the individual members are distinct from the corporation, and they are in no manner bound for its obligations. It would be improper to render a decision in this case which would conclude the holder with respect to the corporation or its property, but he has no claim against the defendants, individuals who, with others, composed the corporation; and they are entitled to a final decree to that effect.

It is to no purpose to say that this corporation is not actively engaged in the business for which it was organized. If the individual members were not bound originally, it is difficult to perceive how they could become liable by a change in the condition of the corporation, by the loss of its property, by the suspension or discontinuance of its business, even by its dissolution. Creditors may proceed against the corporation, or they might provoke a liquidation, and thus reach the property and effects of the corporation; but they have no right of action on the contracts of the corporation against the individuals composing the corporation.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be thus amended: That there be final judgment in favor of defendants, against plaintiff, rejecting the demand of plaintiff, and dismissing his petition and suit; that the rights of the plaintiff, as holder of the two notes sued on as against the North Louisiana and Texas Railroad Company, be reserved and remain wholly unaffected and unim-

Reinhold vs. Ludeling.

paired by the proceedings and decree in this case; and that, thus amended, the judgment appealed from be affirmed with costs.

### DISSENTING OPINION.

EGAN, J. I dissent from so much of the opinion and decree as holds the defendants in no manner to be liable individually for the debt sued for. They may not be liable in this action, and yet be or become so as individual corporators, at least to the extent of any unpaid stock, should the debt not be otherwise satisfied.